**Ricardo Cuellar GASCA, as Personal Representative of the estate of Xavier Cuellar, deceased, Plaintiff,**

v.

**EMPRESA DE TRANSPORTE AERO DEL PERU and Boeing Company, Inc., a Delaware corporation, Defendants.**

No. 97–2711–CIV.

United States District Court, S.D. Florida.

Jan. 20, 1998.

---

Michael Eidson, Roberto Martinez, Enid Duany Mendoza, Colson, Hicks, Eidson, et al., Miami, FL, Michael K. Demetrio, Corboy & Demetrio, Chicago, IL, Aaron S. Podhurst, Steven C. Marks, Joel S. Perwin, Podhurst, Orseck, et al., Miami, FL, Hector J. Lombana, Grossman & Roth, P.A., Miami, FL, Lester G. Kates, Lester G. Kates, P.A., Miami, FL, for Plaintiff.

Edward A. Moss, Anderson, Moss, et al., Miami, FL, Keith Gerrard, Scott F. Seablom, Perkins Coie, Seattle, WA, Michael Holland, Condon & Forsyth, New York City, John M. Murray, Thorton, Davis et al., Miami, FL, for Defendants.

## ORDER DENYING MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant Empresa de Transporte Aero del Peru's ("AeroPeru") Motion to Dismiss on the Ground of Lack of Subject Matter or Treaty Jurisdiction, filed September 11, 1997. Plaintiff filed a Response on December 12, 1997, and AeroPeru filed a Reply on January 9, 1998. The Court heard arguments on the Motion on January 13, 1998.

### I. Factual Background

Plaintiff brings suit as Personal Representative of the estate of the decedent, Xavier Cuellar ("Cuellar"). Cuellar lived in Miami, Florida, where he worked for Black & Decker as a Supply Chain Analyst. The declaration of an employee at Black & Decker's travel agency, Carlson Wagonlit Travel, confirms that it was the practice of many employees working in Black & Decker's Latin American and Caribbean Group to take business trips to Latin America, involving visits to a number of different cities throughout the region. Because of changing business needs, the itinerary of these trips was always flexible.

In late September 1996, Carlson Wagonlit Travel issued Cuellar three separate tickets for a business trip to Latin America. Together, the tickets provided for travel from Miami to São Paulo, Brazil; then to Uberaba, Brazil; back to São Paulo; then to Buenos Aires, Argentina; then to Santiago, Chile; and finally back to Miami. The travel agent preparing the tickets verified that both Black & Decker and the agency regarded the travel plans as one continuous business trip. While in Latin America, Cuellar found it necessary for business reasons to make two unscheduled side trips. One of these was a day trip from Santiago, Chile to Lima, Peru. Aero-Peru was to provide the transportation, and its office in Santiago issued the ticket for the flight. Both the Black & Decker employee in Santiago who arranged the trip, and the travel agent in Santiago who issued the ticket for AeroPeru, confirm in affidavits submitted to the Court that they were aware that Cuellar's side trip was part of his overall business trip for Black & Decker that began and was to end in Miami, Florida. Returning from Lima to Santiago, the AeroPeru flight crashed shortly after takeoff, killing all sixty-one passengers, including Cuellar, and nine crew members aboard the aircraft.

### II. Analysis

■ The international treaty commonly known as the Warsaw Convention governs the liability of airlines engaged in international air transport. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 [hereinafter "Warsaw Convention" or "Convention"]. The Convention's two primary effects are to create a presumption of liability against the airline in cases of injury to passengers or cargo, and to limit the amount of damages that plaintiffs may recover. *See Eastern Airlines v. Floyd*, 499 U.S. 530, 546, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) (describing "primary purpose of the contracting parties to the Convention [as] limiting the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry"); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1489 (D.C.Cir.), *cert. denied*, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). The parties

agree that the Convention governs this case.[1] The parties dispute, however, where the case may be litigated. Plaintiff contends that the United States is a proper forum, while Aero-Peru argues that this case may only be heard in Peru or Chile.

■ Article 28 of the Convention provides that a plaintiff may file an action in only one of four places: (1) the domicile of the carrier, (2) the carrier's principal place of business, (3) the carrier's place of business through which the ticket was issued; or (4) "the place of destination." Convention, art. 28, para. 1. The action must be brought in one of these four places in order for a court properly to exercise subject matter jurisdiction. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir.1997); *Smith v. Canadian Pac. Airways, Ltd.*, 452 F.2d 798, 802 (2d Cir. 1971) (holding that Article 28 is subject matter jurisdictional requirement). While Plaintiff concedes that the first three sections do not confer jurisdiction on a U.S. court, he argues that the fourth section does, because Cuellar's destination, as that term is used in the Convention, was Miami, Florida. Aero-Peru refutes this contention, arguing that Cuellar's destination can only be Chile, because the specific flight operated by Aero-Peru was a round trip to Lima beginning and ending in Santiago.

Courts' difficulty in interpreting the Convention's use of the term destination has spawned diverse results depending on the particulars and complexity of an international passengers' travels. *Compare Eastern*, 499 U.S. at 530 (round trip flight from Miami to Bahamas), *with Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266, 1268 (round-the-world trip originally involving seventeen separate flights). Deciding what destination means under the present facts is the central issue now before the Court.

At the outset, the Court notes that allowing suit in the passenger's destination reveals the Convention's concern with protecting the injured plaintiff:

> Article 28 ... does, however, provide some protection to the plaintiff who is usually a resident in the place where the contract was made or the place of ultimate destination, so that the passenger's home jurisdiction must provide a forum, despite the location of the accident. It is also the plaintiff's prerogative to choose the forum in which to commence the action.

1 Lee S. Kreindler, *Aviation Accident Law* § 10.06 (1997). In line with this reasoning, courts have consistently held that the destination of a round trip is always the point of origin, which is usually the passenger's home. *See, e.g., Swaminathan v. Swiss Air Transp. Co.*, 962 F.2d 387, 389 (5th Cir.1992); *In re Alleged Food Poisoning Incident, March, 1984*, 770 F.2d 3, 4–5 (2d Cir.1985). Even when separate tickets are issued for different portions of a trip, if they are issued in conjunction with each other or refer to each other, the destination will always be the last stop. *See Vergara*, 390 F.Supp. at 1269 (explaining that "in a trip consisting of several parts it is the ultimate destination that is accorded treaty jurisdiction"). Because there can only be one destination, *see In re Alleged Food Poisoning Incident*, 770 F.2d at 6, any intermediate stops on a lengthy trip are considered merely as "agreed stopping places," *id.*

■ Article 1(2) of the Convention provides the test for determining when successive flights may be considered as one trip for the purpose of destination analysis. Courts must decide whether the parties regarded the travel as a "single operation" of "undivided transportation." Convention, art. 1, para. 2.[2] In order to make this determination, courts have primarily relied on two factors: the circumstances surrounding the issuance

---

**1.** Regardless of whether the decedent's journey is viewed narrowly as the Santiago–Lima–Santiago flight, or broadly as a series of flights to various Latin American cities beginning and ending in Miami, it was in any case international and thus governed by the Warsaw Convention.

**2.** This section reads in pertinent part:

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts.

*Id.*

of the tickets and the intent of the parties. "What should matter. when. determining whether two or more ticket booklets constitute a single contract for purposes of the Treaty are the time and place of issuance of the booklets and the contemplated degree of continuity of the journey being ticketed." *Petrire v. Spantax, S.A.,* 756 F.2d 263, 265–66 (2d Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985); *see also Swaminathan,* 962 F.2d at 389 ("Necessarily a passenger's intent deserves considerable weight when ascertaining the final destination; but *this alone* cannot be the sole determining factor.") (emphasis added). Thus, to find the intent of *all* parties involved, the Court must look to all of the relevant circumstances of a particular case.

■■■ When tickets for different flights are issued at the same time and place, a passenger obviously has a strong argument that he or she regarded the flights as comprising one undivided trip. *See, e.g., Petrire,* 756 F.2d at 265 (two ticket booklets issued sequentially at same time and place). However, the circumstances of issuance are not, and should not be, dispositive, given the purpose of ascertaining the parties' intent. *See In re Alleged Food Poisoning Incident,* 770 F.2d at 5 ("First, the 'destination' of a journey for Convention purposes is determined by reference to the intent of the parties."). Although the unilateral expectation of one party does not control the destination question, *see Hernandez v. Aeronaves de Mexico, S.A.,* 583 F.Supp. 331, 333 (N.D.Cal.1984), when the intent of both the carrier and passenger converge, that intent is determinative. As the Second Circuit has explained, "We hold that in cases of round-trip carriage involving successive carriers, where the parties contemplated a single operation of undivided transportation, the 'destination' of the journey is the ultimate destination, that is, the place from which the journey originated." *In re Alleged Food Poisoning Incident,* 770 F.2d at 7.

Thus, most courts have agreed that the objective intent of all parties is the central issue, and that several factors must be considered in order to ascertain that intent. In some cases, however, a court need only look at the contract of transportation (the ticket) to determine the objective intent of the parties. *See,. e.g., Klos,* 133 F.3d at 168 ("[D]etermining what city constitutes the final destination under the Warsaw Convention is governed by the contract between the parties, using basic contract principles."); *Sopcak v. Northern Mountain Helicopter Serv.,* 52 F.3d 817, 819 (9th Cir.1995) (holding that "intention of the parties as expressed in the contract of· transportation, i.e., the ticket or other instrument, determines the final destination"); *Swaminathan,* 962 F.2d at 389 ("When a contract is unambiguous, the instrument alone is taken to express the intent of the parties."). *Klos, Sopcak,* and *Swaminathan* all involved passengers with trips originating in foreign countries who relied solely on their subjective intent to avail themselves of·a forum in the United States. Under those facts, the courts correctly refused to allow the subjective and unilateral intent of only one party (the passenger) to trump the destination indicated on the contract of transportation.

■■■ The facts in this case are markedly different. First, in this case, a U.S. resident, who began and intended to end his business trip ·in his hometown of Miami, seeks to prevent the defendant from denying him U.S. jurisdiction. Second, and most importantly, the uncontroverted evidence presented by Plaintiff demonstrates that all parties in this case knew that Cuellar was engaged in a lengthy business trip whose ultimate destination was Miami. The unchallenged affidavits of both the Black & Decker employee in Santiago who arranged the Santiago–Lima–Santiago flight, and AeroPeru's agent in Santiago who issued the ticket for the flight, attest to the knowledge of all parties that Cuellar was on a business trip that was to ultimately take him back to Miami.[3] *See Karfunkel v. Compagnie Nationale Air France,* 427 F.Supp. 971, 975 (S.D.N.Y.1977) (relying on statements of travel agent who

---

3. The travel agent issuing the ticket on Aero-Peru's behalf acts as its agent; therefore, the travel agent's knowledge is imputed to AeroPeru.

*See In re Air Crash Disaster of Aviateca Flight 901 . Near San Salvador, El Salvador on Aug. 9, 1995,* No. 96–2094, at 12 (S.D.Fla. Aug.29, 1997).

sold ticket at issue), *abrogated on other grounds, Eastern Airlines v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Thus, the Court cannot find Santiago to be the destination for treaty purposes when to do so would completely controvert the intent of all involved. *See In re Air Crash Disaster at Warsaw, Poland, on Mar. 14, 1980,* 748 F.2d 94, 97 (2d Cir.1984) (noting importance of carrier's knowledge); *Lemly v. Trans World Airlines, Inc.,* No. 85–Civ–7043, 1986 WL 5107, at *2 (S.D.N.Y. Apr.29, 1986) (same), *aff'd,* 807 F.2d 26 (2d Cir.1986); *Vergara,* 390 F.Supp. at 1269 (same). This outcome accords with the majority of courts considering the issue and looking to the traveler's overall itinerary to determine what he or she intended the ultimate destination to be. *See Swaminathan,* 962 F.2d at 389 (destination of Dakar–Geneva–New York–Geneva–Dakar trip was Dakar); *Petrire,* 756 F.2d at 266 (destination of Madrid–New York–Madrid trip was Madrid); *In re Alleged Food Poisoning Incident,* 770 F.2d at 7 (destination of Saudi Arabia–England–U.S.–Saudi Arabia trip was Saudi Arabia); *In re Air Crash Disaster of Aviateca Flight 901,* No. 96–2094 at 16 (destination of Oslo–London–Miami–Managua–Miami–London–Oslo trip was Oslo); *Vergara,* 390 F.Supp. at 1269 (destination of round-the-world trip was Omaha, point of origin and passengers' hometown); *Briscoe v. Compagnie Nationale Air France,* 290 F.Supp. 863, 866 (S.D.N.Y. 1968) (destination of New York–Paris–Belgrade–Paris–New York trip was New York). Finding that Cuellar was destined to return to Miami comports with common sense, with the Convention's desire to provide a passenger a forum in his or her home jurisdiction, and with the outcome in cases presenting similar factual scenarios.

The uncontradicted evidence that Cuellar planned to return to Miami, and that the airline knew of this intent, persuades the Court that the United States is properly considered Cuellar's destination. Thus, pursuant to the Warsaw Convention, a U.S. court has jurisdiction to hear this case.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant AeroPeru's Motion to Dismiss on the Ground of Lack of Subject Matter or Treaty Jurisdiction be, and the same is hereby, DENIED.

DONE and ORDERED at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 20th day of January, 1998.