Kathleen **ROBERTSON**, Plaintiff,

v.

**AMERICAN AIRLINES, INC.**, Defendant.

No. CIV.A. 01–2426.

United States District Court, District of Columbia.

Aug. 18, 2003.

Gary Kohlman, Michael Sampson, Bredhoff & Kaiser, P.L.L.C., Washington, DC, for the plaintiff.

Ronald DeWald, Lipshultz & Hone, Silver Spring, MD, for the defendant.

### *MEMORANDUM OPINION*

Granting the Defendant's Motion for Summary Judgment; Denying as Moot the Plaintiff's Motion for Partial Summary Judgment

URBINA, District Judge.

## I. INTRODUCTION

This negligence action comes before the court on the parties' motions for summary

judgment. Plaintiff Kathleen Robertson brings suit against defendant American Airlines ("AA") for compensatory and punitive damages resulting from thermal-burn injuries she allegedly sustained during an AA flight. The defendant contends that the plaintiff's complaint is time-barred by the statute of limitations under the Warsaw Convention [1] governing international air travel. The plaintiff argues that the Warsaw Convention does not apply to her complaint and that consequently her complaint is not time-barred. Because the AA flight on which the plaintiff sustained her injuries qualifies as "international transportation" within the meaning of the Warsaw Convention, the court concludes that the plaintiff's complaint is time-barred, grants the defendant's motion for summary judgment, and denies as moot the plaintiff's motion for partial summary judgment.

## II. BACKGROUND

### A. Factual Background

At the time of the alleged injury, the plaintiff lived and worked in Virginia. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 15; Pl.'s Statement of Undisputed Material Facts ("Pl.'s Statement") ¶ 1. At the end of August 1998, the plaintiff was scheduled to go to Denver, Colorado on business. Def.'s Statement ¶ 2; Pl.'s Statement ¶ 24.

In August and September of 1998, the plaintiff made various travel arrangements, the booking and travel history of which are critical to this dispute. In early August, the plaintiff booked two round-trip flights through her agent at Gateway Travel, Nancy Thompson. Def.'s Statement ¶ 1; Pl.'s Statement of Disputed Material Facts ("Pl.'s Resp.") ¶ 1; Pl.'s Statement ¶¶ 5, 22, 25. First, on August 7, the plaintiff booked a round-trip British Airways ("BA") flight from Denver to London,[2] leaving on September 2 and returning on September 8. Def.'s Statement ¶ 4; Pl.'s Resp. ¶ 4. Three days later, on August 10, the plaintiff booked a round-trip AA flight from Washington, D.C. to Denver (via Chicago) leaving on August 29 and returning on September 8. Def.'s Statement ¶ 5; Pl.'s Resp. ¶ 5. As a result of these bookings, the plaintiff was scheduled to depart Washington for Denver on August 29; depart Denver for London on September 2; and depart London for Denver and Denver for Washington on September 8, as follows:

| Date of booking | Booking agent | Date of flight | Flight | Airline |
| --- | --- | --- | --- | --- |
| August 10 | Thompson at Gateway | August 29 | DC to Chicago to Denver | AA |
| August 7 | Thompson at Gateway | September 2 | Denver to London | BA |
| August 7 | Thompson at Gateway | September 8 | London to Denver | BA |
| August 10 | Thompson at Gateway | September 8 | Denver to Chicago to DC | AA |

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000; T.S. No. 876 (1934), *reprinted in* 49 U.S.C. § 40105 note.

2. The plaintiff's round-trip BA flight continued from London to Malta and back. Def.'s Mot. Ex. 1; Pl.'s Opp'n Ex. 1A. Because the Malta leg does not affect the court's analysis, for the reasons of convenience and clarity the court refers to the flight as Denver–London rather than Denver–Malta.

Def.'s Statement ¶¶ 6–8; Pl.'s Resp. ¶¶ 6–8.

Two weeks later, on August 24, the plaintiff booked an additional flight through Gateway Travel: a one-way trip from London to Washington (via New York) on AA.[3] Def.'s Statement ¶ 12, Def.'s Mot. Exs. 11–12; Pl.'s Resp. ¶ 12. Accordingly, five days before the plaintiff was to leave Washington, her itinerary included two options—one on September 8 and one on September 10—for her return to the United States:

| Date of booking | Booking agent | Date of flight | Flight | Airline |
| --- | --- | --- | --- | --- |
| August 10 | Thompson at Gateway | August 29 | DC to Chicago to Denver | AA |
| August 7 | Thompson at Gateway | September 2 | Denver to London | BA |
| August 7 | Thompson at Gateway | September 8 | London to Denver | BA |
| August 10 | Thompson at Gateway | September 8 | Denver to Chicago to DC | AA |
| August 24 | Unspecified | September 10 | London to New York to DC | AA |

Def.'s Statement ¶¶ 6–8, 12; Pl.'s Resp. ¶¶ 6–8, 12.

On September 2, as scheduled, the plaintiff flew from Denver to London. Pl.'s Statement ¶ 31; *see generally* Def.'s Statement of Disputed Material Facts ("Def.'s Resp."). On the same day that she arrived in London, however, the plaintiff changed her return itinerary.[4] Def.'s Statement ¶¶ 9, 11; Pl.'s Resp. ¶¶ 9, 11. Specifically, she changed her September 8 London–Denver BA flight and Denver–Washington AA flight to September 10. *Id.* She did not, however, cancel her existing September 10 London–Washington AA flight. Def.'s Statement ¶ 13; Pl.'s Statement ¶ 13. As a result, she had two options—both leaving on September 10, but at different times—for her return to the United States:

| Date of booking | Date of flight | Flight (with scheduled departure/arrival times) | Airline |
| --- | --- | --- | --- |
| August 7 (changed Sept. 2) | September 10 | London (10:20 am) to Denver (1:20 pm) | BA |
| August 10 (changed Sept. 2) | September 10 | Denver (4:32 pm) to Chicago to DC (11:19 pm) | AA |
| August 24 | September 10 | London (8:00 am) to New York to DC (2:10 pm) | AA |

*Id.* On September 10, the plaintiff took the BA flight from London to Denver, spent three hours in the Denver airport, and then took the AA flight from Denver to

3. The plaintiff contends that the defendant presents no evidence to show that Nancy Thompson, the plaintiff's agent at Gateway Travel, was involved in the booking of the London–Washington AA flight, and states that the Gateway Travel invoice and electronic ticket for this booking "speak for themselves." Pl.'s Resp. ¶ 12. The court notes that the name "Nancy" appears on the top left-hand corner of the Gateway Travel invoice for this booking. Def.'s Mot. Ex. 11.

4. The record does not indicate whether the plaintiff used a travel agent to make these changes.

Washington via Chicago.[5] Def.'s Statement ¶¶ 9–10; Pl.'s Resp. ¶¶ 9–10; Pl.'s Statement ¶¶ 32, 34–35. It was on the Denver–Chicago leg of the AA flight that the plaintiff sustained the thermal burns that form the basis for her complaint.[6]

## B. Procedural History

On September 7, 2001, three years after the alleged injury, the plaintiff filed a complaint in the Superior Court of the District of Columbia. Notice of Removal. The defendant, joined by then-defendant AMR Corporation ("AMR") (collectively, the "defendants") subsequently removed the action to this court. *Id.* On August 16, 2002, the defendants filed a motion for summary judgment, and the plaintiff filed a motion for partial summary judgment. On December 16, 2002, the court issued a memorandum opinion striking the defendants' motion for failure to comply with Local Civil Rule 56.1, directing the plaintiff to clarify her position with regard to AMR, and setting a new briefing schedule. *Robertson v. Am. Airlines, Inc.*, 239 F.Supp.2d 5 (D.D.C.2002).

On January 15, 2003, the defendants filed a revised motion for summary judgment. On January 29, 2003, the plaintiff filed a notice of dismissal against AMR, leaving AA as the sole defendant in the case. The court now turns to the defendant's motion for summary judgment and the plaintiff's motion for partial summary judgment.[7]

## III. ANALYSIS

### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however,

---

**5.** The plaintiff did not use her September 10 London-to-Washington AA flight, instead asking her employer to reimburse her for the cost of that ticket. Def.'s Statement ¶¶ 13–14; Pl.'s Resp. ¶¶ 13–14.

**6.** On that flight, the plaintiff was traveling with a gel pack to relieve back discomfort. Def.'s Statement ¶ 17; Pl.'s Statement ¶ 11. During the flight, she approached an AA flight attendant, explained that her gel pack had become warm, and asked him for something to keep the gel pack cold. Id. The flight attendant took the gel pack and returned with

an air-sickness bag in which he had placed the gel pack and a piece of dry ice. Def.'s Statement ¶ 20; Pl.'s Statement ¶¶ 13–14. After the plaintiff placed the package on her back, she sustained thermal burns. Def.'s Statement ¶¶ 22, 24; Pl.'s Statement ¶ 18.

**7.** On July 3, 2003, the plaintiff filed a motion to supplement her motion for partial summary judgment. In light of the court's conclusion, the court denies as moot this motion to supplement.

must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. Legal Standard for the Application of the Warsaw Convention

■ The Warsaw Convention governs air carrier liability for claims arising out of "all international transportation" of persons and property by air. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 160, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *Cruz v. Am. Airlines, Inc.*, 193 F.3d 526, 527 (D.C.Cir.1999). Under Article 17 of the Convention, air carriers are liable for "bodily injury suffered by a passenger if the accident which caused the [injury] took place on board the aircraft or in the course of any of the operations of embarking or disembarking." 49 U.S.C. § 40105 note. Article 29 of the Convention bars recovery of damages, however, if the plaintiff does not bring an action within two years of the date of actual or scheduled arrival at the destination, or the date on which the transportation stopped. *Id.* Because the "cardinal purpose" of the Convention is to provide uniformity of rules governing claims arising from international air travel, the Convention "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention." *Tseng*, 525 U.S. at 161, 169, 176, 119 S.Ct. 662. Accordingly, "if [recovery is] not allowed under the Convention, [it] is not available at all." *Id.* at 161, 119 S.Ct. 662.

For the Convention to apply, the flight on which the personal injury allegedly occurred must qualify as "international transportation." 49 U.S.C. § 40105 note. Under Article 1(3) of the Convention, transportation involving successive carriers

shall be deemed ... to be one undivided transportation, *if it has been regarded by the parties as a single operation*, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty ... of the same High Contracting Party.

*Id.* (emphasis added); *Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1325 (D.C.Cir.1999). Under the Convention, then, the parties must view the transportation as a "single operation." *Id.; see also Manion v. Am. Airlines, Inc.*, 17 F.Supp.2d 1, 4 (D.D.C.1997) (finding that the parties must be "reasonably aware of the international nature of the transportation").

■ Because "[the parties]—especially the traveler—are unlikely ever to have remotely considered the question whether

the transportation was 'a single operation,'" our court of appeals has noted that it is "rather difficult" to look to the subjective intent of the parties. *Haldimann,* 168 F.3d at 1325. Instead, courts look to specific documentary indicia of the parties' intent. *Id.* (citing 2d, 5th, and 9th Circuit precedent); *see also Manion,* 17 F.Supp.2d at 4 (holding that courts must decide the intent of the parties based on the objective evidence). Courts also look to "the time and place of issuance of the booklets and the contemplated degree of continuity of the journey being ticketed." *Petrire v. Spantax,* 756 F.2d 263, 265–66 (2d Cir.1985); *see also Santleben v. Continental Airlines, Inc.,* 178 F.Supp.2d 752, 755 (S.D.Tex.2001); *Gasca v. Empresa De Transporte Aero Del Peru,* 992 F.Supp. 1377, 1381 (S.D.Fla.1998).

## C. The Court Concludes That the Plaintiff's Complaint Is Time–Barred By the Warsaw Convention

In this case, the defendant argues that both parties regarded the AA flight on which the plaintiff sustained her injuries as part of a "single operation" of international transportation, rather than a domestic trip to Denver and a separate international trip to London. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 17. The defendant argues that it knew that the plaintiff's travel was a single operation because the knowledge of the plaintiff's travel agent may be imputed to the defendant. *Id.* at 16–17; Def.'s Reply at 10–12. As for the plaintiff's knowledge, the defendant points to the coordinated nature of her flight arrangements as evidence that she viewed her flights as a single operation. Def.'s Mot. at 9–14. First, the defendant emphasizes that the plaintiff used the same travel agent to book both her Denver–London BA round-trip and her Washington–Denver AA round-trip. Def.'s Mot. at 9; Def.'s Reply at 1. Second, the defen-

dant notes that the plaintiff booked her Denver–London BA round-trip before booking her Washington–Denver AA round-trip, demonstrating that she must have contemplated the domestic leg at the time she purchased the international leg. Def.'s Mot. at 9–10; Def.'s Reply at 3, 9. Third, the defendant points out that the plaintiff scheduled the return legs of both round-trips for the same day, minimizing the time spent in Denver to three hours. Def.'s Mot. at 12; Def.'s Reply at 1–2. Fourth, the defendant stresses that on September 2, when the plaintiff made changes to her return itinerary, she changed both the London–Denver leg and the Denver–Washington leg, and kept the three-hour Denver layover. Def.'s Mot. at 10; Def.'s Reply at 2–3, 7–8. Finally, the defendant highlights the fact that the plaintiff purchased an alternate route home on a London–Washington AA flight that bypassed Denver altogether. Def.'s Mot. at 10–12, 14. Taken together, the defendant argues, these booking arrangements constitute objective evidence that the plaintiff regarded her transportation as a "single operation." *Id.* at 9–14; Def.'s Reply at 1–2. The defendant therefore concludes that the plaintiff's personal-injury claim is time-barred by the Convention's two-year statute of limitations. Def.'s Mot. at 18, 20.

The plaintiff strenuously disputes the defendant's conclusion, arguing that the Convention does not apply because the objective evidence shows that neither party regarded the AA flight on which she sustained her injuries as part of a single operation. Pl.'s Opp'n at 7–8, 11, 14–17. The plaintiff contends that she viewed her AA flight as "purely domestic." *Id.* at 7–8. As evidence in support of her argument, she emphasizes that (1) she purchased her Denver–London BA round-trip and her Washington–Denver AA round-trip on two different airlines and two different days,

(2) she charged the tickets to two different clients, (3) she received the two sets of tickets in separate booklets and in separate mailings, (4) each itinerary had a unique invoice number, (5) Gateway Travel understood each itinerary to be separate, and (6) she spent four or five days in Denver before leaving for London. *Id.* at 8–12. As for the defendant's knowledge, the plaintiff asserts that "there is no way" the defendant could have known that the round-trip Washington–Denver AA flight was a component of international travel. *Id.* at 14. The plaintiff stresses that no case law in this circuit has imputed the knowledge of a travel agent to the airline, and that in any event the owner of Gateway Travel attests that the agency viewed the two round-trips as separate and distinct. *Id.* at 15–17.

■ Based on the objective evidence, the court concludes that the parties regarded the plaintiff's travel as a "single operation" within the meaning of the Convention. *Haldimann*, 168 F.3d at 1325. Certainly the plaintiff regarded her travel as such.[8] The Gateway Travel invoices and itineraries show that the plaintiff purchased the Denver–London and Washington–Denver round-trips though Ms. Thompson, her agent at Gateway Travel.[9] *Id.* (finding a single operation in part because the plaintiff booked her domestic and transatlantic travel though one travel agency); Def.'s Mot. Ex. 1; Pl.'s Opp'n Ex. 1A. Although the plaintiff booked the two round-trips separately, she revealed her international intentions by booking her Denver–London round-trip first, before booking the flight that would get her from her home in the Washington area to Denver.[10] Def.'s Mot. Ex. 1; Pl.'s Opp'n Ex. 1A. Moreover, the documents create a

---

**8.** The plaintiff submits a sworn affidavit dated September 20, 2002 that states that

> [a]t no time prior to or during (or, for that matter, after) my American Airlines flight from Denver to Chicago on September 10, 1998, did I intend or consider my domestic travel (between Washington, D.C., Chicago, and Denver) on American Airlines and my international travel on British Airways (between Denver, London, and Malta) to be part of a single itinerary. I always believed these two trips to be two [*sic*] separate and distinct.

Pl.'s Opp'n Ex. 6. To determine whether the parties regarded travel as a single operation, however, the court focuses on the objective evidence, "rather than ... after-the-fact professed subjective intent." *Manion*, 17 F.Supp.2d at 4 (internal citations omitted). The plaintiff's affidavit therefore is irrelevant to the court's analysis. *Id.*

**9.** Neither party submitted the plaintiff's tickets as part of the record, apparently because the plaintiff turned them in to her employer for reimbursement. Def.'s Mot. Ex. 8 (Robertson Dep.).

**10.** The plaintiff relies on *Santleben* to support her argument that her Washington–Denver round-trip was not a component of her Denver–London round-trip. Pl.'s Opp'n at 14 (citing *Santleben v. Continental Airlines, Inc.*, 178 F.Supp.2d 752, 755 (S.D.Tx.2001)). The *Santleben* plaintiffs were American citizens living in Italy who first arranged a flight from Italy to Baltimore, Maryland, and then booked round-trips on Continental Airlines from the Baltimore area to San Antonio, Texas. *Santleben*, 178 F.Supp.2d at 753–55. In concluding that the plaintiffs' flights did not qualify as a single operation under the Convention, the *Santleben* court noted that "at the time of the international contract, there was no domestic leg." *Id.* at 755. Seizing upon this statement, the plaintiff argues that because she had not booked her domestic round-trip at the time she booked her international round-trip, this court likewise should conclude that her flights do not qualify as a single operation under the Convention. Pl.'s Opp'n at 14. But the plaintiff misses a key point: the *Santleben* plaintiffs started their travels in Italy, while the plaintiff here started her travels in the United States. *Compare* Sentleben, 178 F.Supp.2d at 753, *with* Def.'s Mot. Ex. 1; Pl.'s Opp'n Ex. 1A. The *Santleben* plaintiffs' domestic travel necessarily was predicated on the completion of their international travel. Just the opposite is true here:

clear inference that the plaintiff planned her return from London to Washington as if it were a single journey, beginning and concluding on the same day. First, the plaintiff repeatedly coordinated the return legs of her two round-trips as one, booking the Washington–Denver round-trip return leg to coordinate with the September 8 return leg of her London–Denver round-trip and later simultaneously changing both return legs to September 10. Def.'s Mot. Ex. 1–3; Pl.'s Opp'n Ex. 1A. Second, the plaintiff booked the alternate return AA flight for September 10 that bypassed Denver and arrived in Washington some nine hours earlier.[11] Def.'s Mot. Ex. 11. Taken together, the objective evidence reveals that the plaintiff regarded her domestic and international flights as a single operation.[12] *Haldimann,* 168 F.3d at 1325.

The objective evidence also shows that the defendant was aware of the plaintiff's international flight plans. *Manion,* 17 F.Supp.2d at 4. Although there is very little case law on the subject, in recent years courts have held that a travel agent's knowledge of a plaintiff's travel intentions is imputed to the carrier. *E.g., Coyle v. P.T. Garuda Indonesia,* 180 F.Supp.2d 1160, 1166 (D.Or.2001); *Gasca,* 992 F.Supp. at 1381 n. 3; *In re Air Crash Disaster of Aviateca Flight 901,* 29 F.Supp.2d 1333, 1342 (S.D.Fla.1997). Here, the invoices and itineraries show that Ms. Thompson, the plaintiff's agent at Gateway Travel, booked the plaintiff's Washington–Denver and Denver–London round-trips. Def.'s Statement ¶ 1; Pl.'s Resp. ¶ 1; Pl.'s Statement ¶¶ 5, 22, 25. Ms. Thompson's knowledge of the plaintiff's coordinated domestic and international travel therefore may be imputed to both the defendant and BA, the other carrier.[13] *Coyle,* 180 F.Supp.2d at 1166; *Gasca,* 992 F.Supp. at 1381 n. 3; *In re Air Crash*

---

the plaintiff's international travel was predicated on the completion of her domestic travel. Therefore, the fact that the plaintiff booked her international round-trip before booking her domestic round-trip supports, rather than undercuts, an inference of continuity between the two round-trips. *Petrire,* 756 F.2d at 265–66.

11. The plaintiff states that she did not take the more direct AA flight because she consciously chose to complete her international travel by returning to Denver and then completing her separate domestic itinerary between Denver and Washington. Pl.'s Opp'n at 20. The defendant scoffs at that explanation, and suggests that it is more likely that the plaintiff overslept, missing the earlier AA flight. Def.'s Reply at 15–16. Because the court focuses only on the objective evidence, it need not speculate on the reasons for the plaintiff's choice. *Haldimann,* 168 F.3d at 1325.

12. The fact that the plaintiff received the tickets for the round-trips in separate ticket booklets with separate invoice numbers, and spent time in Denver between the round-trips does not affect the court's conclusion. Def.'s Mot.

Exs. 1, 8; Pl.'s Opp'n Exs. 1A, 2; *Haldimann,* 168 F.3d at 1326 (stating that courts have found a single operation without first ascertaining "whether a single record number embraced all legs of the journey"); *Petrire,* 756 F.2d at 265 (noting the absurdity of basing the existence of a single contract on whether the tickets "were enclosed in one or two booklets"); *Santleben,* 178 F.Supp.2d at 755 (emphasizing that a single operation may exist "[n]o matter the number of connecting flights, layovers, and side trips scheduled during the journey").

13. The plaintiff also submits an affidavit from Helen Klohmann, the owner of Gateway Travel, who states that it is her opinion that the two round-trips booked by Ms. Thompson were "separate and distinct travel plans" and that "these two itineraries were separate and distinct." Pl.'s Opp'n Ex. 1. As noted, however, in its inquiry the court focuses on objective rather than subjective evidence, and particularly subjective evidence from a party who was not directly involved in the booking transaction. *Manion,* 17 F.Supp.2d at 4. The Klohmann affidavit therefore is irrelevant to the court's analysis.

*Disaster of Aviateca Flight 901,* 29 F.Supp.2d at 1342; *cf. Karfunkel v. Compagnie Nationale Air France,* 427 F.Supp. 971, 975 (S.D.N.Y.1977) (finding that a single operation did not exist in part because the agent who sold the plaintiffs their tickets from Tel Aviv to Paris was unaware that they planned to continue on to New York), *abrogated on other grounds, Eastern Airlines v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

In sum, the court concludes that the objective evidence indicates that the parties regarded the plaintiff's travel as a "single operation" within the meaning of the Convention. *Haldimann,* 168 F.3d at 1325. Accordingly, the Convention's two-year statute of limitations applies to the plaintiff's personal-injury claim. 49 U.S.C. § 40105 note. Because the alleged injury occurred three years before the plaintiff filed suit, the plaintiff's complaint is time-barred. *Id.* Accordingly, the court grants the defendant's motion for summary judgment and denies as moot the plaintiff's motion for partial summary judgment. FED. R. CIV. P. 56(c); *see also Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Diamond,* 43 F.3d at 1540.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies as moot the plaintiff's motion for partial summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of August, 2003.