Martha HALDIMANN and Blaise
Haldimann, husband and
wife, Appellants,

v.

**DELTA AIRLINES, INC., Appellee.**

No. 98–7135.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 28, 1999.

Decided March 12, 1999.

Barry C. Hansen argued the cause for appellants. With him on the brief was Michael J. Pangia.

William G. Schaffer argued the cause and filed the brief for appellee.

Before: WILLIAMS and RANDOLPH, Circuit Judges and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

On June 19, 1996 Martha Haldimann set out from Geneva on a journey to the United States. Swissair was to take her to Washington and, at the end, back to Geneva; Delta was to take her from Washington (leaving about a week after her arrival) to Pensacola (to visit her parents), then on to Gainesville (for a seminar at the University of Florida), and finally back to Washington in time for her to depart for Geneva on July 15. On the Pensacola to Gainesville leg of the journey, Haldimann was injured when one of the engines caught fire during preparation for take-off. She sued Delta for her injuries, her husband joining for loss of consortium. If the Pensacola–Gainesville flight was "international transportation" within the meaning of the Warsaw Convention,[1] then its provisions apply, with the effect (among others) of limiting Delta's liability to $75,000. The district court concluded that the Pensacola–Gainesville leg was international transportation, and granted Delta's motion for partial summary judgment to that effect. It then granted plaintiffs' motion to certify the order for immediate appeal under 28 U.S.C.

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000; T.S. No. 876 (1934), *reprinted* in 49 U.S.C. § 40105 note.

§ 1292(b), and we granted the petition for such an appeal. We affirm.

\* \* \* \* \* \*

The Convention defines international transportation as:

> [A]ny transportation in which, according to the contract made by the parties, the place of departure and the place of destination, *whether or not there be a break in the transportation* ... are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty ... of another power ...

Article 1(2), 49 U.S.C. § 40105 note (emphasis added). The Convention also provides that transportation to be performed by successive carriers shall be deemed to be

> one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty ... of the same High Contracting Party.

Article 1(3).

Although the emphasized language in Article 1(2) might support a claim that the entire trip was international, the parties assume that it is Article 1(3) that controls, and we follow suit. The language of the Article 1(3), "if it has been regarded by the parties as a single operation," suggests that we must look to the intention of the parties. It would seem rather difficult to do so, for they—especially the traveler—are unlikely ever to have remotely considered the question whether the transportation was "a single operation," or ever to have pondered what that phrase might mean. In fact, in the rare case where there has been evidence of the traveler's subjective intent, and it contradicted the court's inference from specific documentary indicia, courts have held that the indicia trump subjective evidence. The cases mostly involve application of Article 28(1), allowing

jurisdiction in the place of "destination," which on a round-trip means the starting place. Thus, where Polish citizens flew from Warsaw to New York intending not to return to Poland, but bought round-trip tickets because otherwise the regime would not have allowed them out of Poland, the court treated the ticket as controlling. So the journey was the full round-trip, and Warsaw the "destination." *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 166–68 (2d Cir.1997). And when a traveler bought a roundtrip ticket from Dakar to New York, leaving the date of the return journey open, he was held to have embarked on a round-trip even though he said (apparently without contradiction) that he intended to remain in New York and had bought the round-trip ticket only because it was cheaper than a one-way. *Swaminathan v. Swiss Air Transport Co.,* 962 F.2d 387 (5th Cir.1992). See also *Sopcak v. Northern Mountain Helicopter Service,* 52 F.3d 817, 819 (9th Cir.1995) (looking to "intention of the parties as expressed in the contract of transportation"); *Petrire v. Spantax,* 756 F.2d 263, 264–65 (2d Cir.1985).

Here, Haldimann arranged her entire travel itinerary through a Swiss travel agency called Lathion–Voyages, which booked space on Swissair for the transatlantic travel and on Delta for the travel within the United States. The Swissair and Delta tickets were contained in separate booklets, but both were issued and paid for on the same date, March 7, 1996. Both tickets share the same record number, with the consequence that a Delta agent pulling up the Delta flights on a computer would also see the Swissair legs of the journey, and vice versa.

The Second Circuit in *Petrire,* and a host of district courts, have found simultaneous issue of ticket booklets at a single place sufficient to establish the "single operation" required by Article 1(3). 756 F.2d at 264–65; see also *McLoughlin v. Commercial Airways (Pty) Ltd.,* 602 F.Supp. 29, 33 (E.D.N.Y.1985) ("The law seems clear that where, as here, the parties arrange and pay in full for an international trip at the outset, each leg of the journey (even though some legs may be wholly domestic, covered by a separate ticket and carried on a separate airline) is within

the Convention"); *Vergara v. Aeroflot "Soviet Airlines"*, 390 F.Supp. 1266 (D.Neb.1975) (court finds one undivided trip under Convention where each plaintiff purchased at same time, same place, and through the same agent six booklets of tickets for an around-the-world trip on eight different airlines with stops in as many countries). They have reached that result apparently without even ascertaining whether a single record number embraced all legs of the journey.

The plaintiffs emphasize that the Swissair and Delta components of the journey were in separate ticket booklets and that the entire trip took more than a month. No court has regarded either of such factors as militating even in the slightest against finding a "single operation." And the language of the Convention argues against doing so, as Article 1(3) views transportation as "undivided ... whether it has been agreed upon under the form of a single contract or of a series of contracts." The Second Circuit in *Petrire* expressly declined to allow the existence of multiple ticket booklets to affect the analysis, even though, curiously, it appeared to assume that a single operation required that there be only one contract. *Petrire*, 756 F.2d at 265 ("The already fine distinctions that have developed in construing the Warsaw Convention would become absurd if the existence of a single contract turned on whether the ... coupons issued for travel ... were enclosed in one or two booklets"). Nor are plaintiffs able to cite a single case relying on the duration of a journey, even though the occasional case will reveal in the statement of facts a journey about as long as the plaintiff's here. See *Vergara*, 390 F.Supp. at 1268 (22 days scheduled for journey, with flights "open" for later phases of trip). Plaintiffs offer no reason why duration should be of any relevance when other factors suggest a single undivided trip.

It may seem odd that Ms. Haldimann's Delta flights, occurring entirely within the United States and in themselves certainly capable of being viewed as a complete journey, should prove to be part of "international transportation." But the Convention aims primarily to "achiev[e] uniformity of rules governing claims arising from international air transportation." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). And the liability limit, here cutting against Ms. Haldimann, is only part of a trade-off, balanced as it is by the Convention's presumption of liability. See Articles 17 et seq.; see also *El Al Israel Airlines v. Tseng*, —— U.S. ——, 119 S.Ct. 662, 672, 142 L.Ed.2d 576 (1999); *Republic Nat'l Bank v. Eastern Airlines*, 815 F.2d 232, 236 (2d Cir.1987). It thus enables international travelers to secure the benefits of the treaty regime even for segments of international transportation that are wholly within the territory of a signatory with a tort system far narrower than that of the treaty.

Thus, viewing the evidence in the light most favorable to the nonmoving party, as we must on summary judgment, *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Pensacola–Gainesville journey was, as a matter of law, part of "international transportation."

The judgment of the district court is affirmed.

*So ordered.*