# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 16, 2004       Decided March 18, 2005

No. 03-7129

KATHLEEN ROBERTSON,
APPELLANT

v.

AMERICAN AIRLINES, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02426)

———

*Lisa A. Fishberg* argued the cause for appellant. On the briefs was *Barry Coburn*.

*Ronald G. DeWald* argued the cause and filed the brief for appellee.

Before: GINSBURG, *Chief Judge*, and GARLAND and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Kathleen Robertson sued American Airlines for damages resulting from burns she

sustained on a flight from Denver to Chicago. If that flight qualifies as "international transportation" within the meaning of the Warsaw Convention, Robertson's suit is barred by the Convention's statute of limitations. The district court concluded that the flight -- which was one leg of a trip that began in London and ended in Washington the same day -- did so qualify. We affirm.

I

In 1998, appellant Robertson was a "war games" strategist living in the Washington, D.C. area. On August 7, 1998, she had a travel agent, Nancy Thompson of Gateway Travel, book her a round-trip flight between Denver and London on British Airways (BA), departing on September 2 and returning on September 8. Three days later, on August 10, Thompson also booked Robertson on a round-trip flight between Washington, D.C. and Denver, via Chicago, on American Airlines (AA). That flight was to depart on August 29 and to return on September 8. Thus, as initially scheduled, Robertson was to leave Washington on August 29; to stay in Denver for several days before continuing to London on September 2; and to depart London for home on September 8, with a three-hour layover in Denver. On August 24, Robertson used Gateway Travel to book an alternative route home: a one-way ticket on AA from London to Washington, via New York, departing and arriving on September 10.

As scheduled, Robertson flew from Washington to Denver on August 29. She remained for a few days in Denver, where she conducted a war games exercise with the city's mayor, and then flew from Denver to London on September 2. That day, Robertson had her initially scheduled return flights -- London-Denver on BA, and Denver-Chicago-Washington on AA -- changed from September 8 to September 10, the same date for

which she held the alternative ticket from London to Washington on AA. Thus, Robertson had two available itineraries for her return home on September 10. First, she could take an 8:00 a.m. AA flight from London, connect in New York, and arrive in Washington at 2:10 p.m. Second, she could take a 10:20 a.m. BA flight from London, arrive in Denver at 1:20 p.m., switch to a 4:32 p.m. AA flight from Denver, connect in Chicago, and arrive in Washington at 11:19 p.m.

Robertson chose the latter -- and later -- alternative and departed from London on the morning of September 10 aboard the BA flight to Denver. After a three-hour layover in Denver, she boarded the AA flight to Washington by way of Chicago. En route, she asked a flight attendant to cool a "gel pack" she was using to treat a sore back. According to Robertson's complaint, the attendant returned with an air-sickness bag containing the gel pack and dry (rather than ordinary) ice. When Robertson put the bag on her back, she suffered third-degree burns.

Just short of three years later, on September 7, 2001, Robertson sued American Airlines in the Superior Court of the District of Columbia. American removed the action to the United States District Court for the District of Columbia. On January 15, 2003, American filed a motion for summary judgment, contending that the action was governed by the Warsaw Convention[1] because the claim arose out of international transportation, and that the Convention's two-year statute of limitations, *see* Art. 29(1), 49 Stat. 3021, barred Robertson's claim. Robertson argued that the Convention did not apply, and that the action was instead governed by the

---

[1]Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* 49 U.S.C. § 40105 note.

District of Columbia's three-year statute of limitations, D.C. Code § 12-301. The district court agreed with American and granted its motion for summary judgment. *Robertson v. American Airlines, Inc.*, 277 F. Supp. 2d 91, 100 (D.D.C. 2003).

## II

We review the district court's grant of summary judgment de novo. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Under Federal Rule of Civil Procedure 56(c), summary judgment should be awarded only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). We conclude that the district court's grant of summary judgment to American Airlines was correct.

The Warsaw Convention governs air carrier liability for claims arising out of "international transportation" of persons and property by air. Art. 1(1), 49 Stat. 3014; *see El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 160 (1999). As we have noted before, the Convention's provisions sometimes advantage plaintiffs and sometimes defendants, depending upon the circumstances. *Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1326 (D.C. Cir. 1999). In this case, the parties agree that if the flight on which Robertson was injured qualifies as international transportation, the Convention applies and its two-year statute of limitations bars her recovery. Appellant's Br. at 10; Appellee's Br. at 4.

Article 1(2) of the Convention defines "international transportation" as "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation . . . , are situated . . . within the territories of two

High Contracting Parties." 49 Stat. 3014. Article 1(3) further provides that:

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty . . . of the same High Contracting Party.

*Id.* at 3015. Thus, the Convention contemplates that an entirely domestic leg of an international itinerary will be covered by the Convention as part of "one undivided [international] transportation" -- even if it is performed by a "successive" carrier and even if the various legs are agreed upon under "a series of contracts" -- as long as it has been "regarded by the parties" as part of "a single operation."

But how do we decide how a particular trip was "regarded by the parties"? In *Haldimann*, we noted that, although the Convention's language "suggests that we must look to the intention of the parties," it "would seem rather difficult to do so, for they -- especially the traveler -- are unlikely ever to have remotely considered the question whether the transportation was 'a single operation,' or ever to have pondered what that phrase might mean." 168 F.3d at 1325. We further noted that, "in the rare case where there has been evidence of the traveler's subjective intent, and it contradicted the court's inference from specific documentary indicia, courts have held that the indicia trump subjective evidence." *Id.* Relying upon the available objective indicia in that case, we held that a Delta Airlines flight

from Pensacola, Florida to Gainesville, Florida was part of a single operation when it was one leg of the following itinerary: from Geneva, Switzerland to Washington, D.C., on Swissair; from Washington to Pensacola to Gainesville and back to Washington, on Delta; and from Washington back to Geneva, on Swissair. Other circuits have similarly eschewed subjective in favor of objective evidence of intent in making this kind of determination. *See Coyle v. P.T. Garuda Indon.*, 363 F.3d 979, 987 (9th Cir. 2004); *Petrire v. Spantax, S.A.*, 756 F.2d 263, 266 (2d Cir. 1985). We -- like the district court -- follow that course here.

We begin by asking whether Robertson regarded her London-Denver travel and her Denver-Chicago-Washington travel as a single operation. There can be no genuine dispute over this question. First, on the morning of September 10, 1998, Robertson held alternative itineraries for her flight from London: one on AA through New York to Washington, and a later flight on BA connecting to AA in Denver and on to Washington via Chicago. This indicates that both the intermediate stops and the choice of carriers were incidental to her plan to fly from London to Washington that day.

Second, and in our view dispositive, Robertson scheduled her BA-AA connection in Denver so that her flight to Chicago (and on to Washington) would depart within about three hours of her arrival from London. It is unlikely that a layover of that length would even have given her time to leave the airport, and the record confirms that Robertson had no purpose for being in Denver on that day other than to make the plane connection. *See In re Air Crash Disaster of Aviateca Flight 901*, 29 F. Supp. 2d 1333, 1342 (S.D. Fla. 1997) ("Common sense dictates that when a traveler plans such a short layover between the parts of a journey, the traveler regards the layover as merely an intermediate stopping place and not his or her destination.").

Accordingly, there can be no genuine dispute that Robertson regarded the Denver-Chicago trip as part of a unified journey from London to Washington.

Robertson points to a number of circumstances that she maintains are inconsistent with the conclusion that she regarded her travel as a single operation. She notes, for example, that on the outbound trip she stayed in Denver for four days, where she engaged in work that was different from the business she had in London. But the argument that these facts are inconsistent with her regarding the journey as a single operation is foreclosed by *Haldimann*, in which we found a single operation notwithstanding multiple-day stay-overs -- with different purposes -- between several legs of the plaintiffs' itinerary. *See* 168 F.3d at 1324, 1326; *see also* Art. 1(2), 49 Stat. 3014 (providing that transportation may constitute "'international transportation' . . . whether or not there be a break in the transportation"). In any event, this argument would not affect the conclusion that Robertson regarded the London-Denver-Washington return trip, which involved only a three-*hour* layover, as a single operation.

Robertson also points out that she purchased the two round-trip tickets (Denver-London-Denver and Washington-Denver-Washington) on two different airlines, that the tickets were issued in separate booklets, that she purchased them on different days, and that she received them in separate mailings. But the fact that the tickets were purchased on two different airlines is what frames the question, not what decides it: the point of Article 1(3) is that "[t]ransportation to be performed *by several successive air carriers* shall be deemed . . . to be one undivided transportation" if regarded by the parties as a single operation. 49 Stat. 3015 (emphasis added). Nor, as we held in *Haldimann*, does the fact that the tickets were issued in separate booklets "militat[e] even in the slightest against finding a 'single

operation,'" since "Article 1(3) views transportation as 'undivided . . . whether it has been agreed upon under the form of a single contract or of a series of contracts.'" 168 F.3d at 1326 (quoting Art. 1(3), 49 Stat. 3015). For the same reason, we regard as insignificant the fact that three days separated one purchase from the other (along with its corollary that the tickets were sent in separate mailings). Indeed, while the initial purchases were made three days apart, they plainly were coordinated to link the two round trips together; and when the return trip was changed to September 10, the London-Denver and the Denver-Washington legs were changed simultaneously.

The remaining question is how American Airlines regarded Robertson's travel. There is no doubt that if American knew the objective facts of Robertson's itinerary as set forth above, the airline -- like Robertson -- would have regarded the Denver-Chicago-Washington flight as part of a single operation with the London-Denver flight. But did American know? American did have a record of a London-New York-Washington ticket for Robertson dated September 10. However, because the AA ticket she ultimately used was only for Denver-Chicago-Washington, it is not clear that the airline would have known she was traveling internationally that day. Noting that other district "courts have held that a travel agent's knowledge of a plaintiff's travel intentions is imputed to the carrier," the district court resolved the issue by applying the same rule. *Robertson*, 277 F. Supp. 2d at 99. Because Robertson's appellate briefs do not dispute it, we apply the imputation rule as well.[2]

---

[2]Robertson did dispute the rule during questioning at oral argument, but oral argument is too late to raise an objection for appellate consideration. *See, e.g.*, *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003); *C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 883 n.1 (D.C. Cir. 1988).

Robertson concedes that a travel agency, Gateway Travel, made the reservations for all of the BA and AA flights up to and including those on September 8 (as well as for the London-New York-Washington AA flight scheduled for September 10). Appellant's Br. at 3. Although Robertson does not concede that she also used Gateway to change the September 8 tickets to September 10, she does not dispute that Gateway knew of the change, Oral Arg. Tape at 14:45-18:15, and does not assert that she or anyone other than Gateway made the change -- a fact that presumably would be within her personal knowledge.[3] Moreover, both BA's and AA's internal Passenger Name Records (PNRs) for Robertson's September 10 flights contain references to "Gateway Travel Nancy." J.A. 326, 328. Accordingly, because the *only* evidence in the record confirms that American (through Gateway) knew of the London-Denver leg of Robertson's trip, we concur in the district court's conclusion that there is no genuine dispute that the airline "was aware of [her] international flight plans." *Robertson*, 277 F. Supp. 2d at 99.[4]

---

[3]Although Robertson submitted an affidavit from Helen Klohmann, an owner of Gateway, the Klohmann affidavit does not state whether Gateway made the change. Instead, Klohmann (who did not personally handle Robertson's bookings) declares that "Gateway Travel's understanding was that" Robertson's Washington-Denver-Washington and Denver-London-Denver "itineraries were separate and distinct." Pl.'s Opp'n to Mot. for Summ. J., Ex. 1. The district court properly regarded the affidavit as irrelevant because the Warsaw Convention inquiry "focuses on objective rather than subjective evidence, and particularly [not on] subjective evidence from a party who was not directly involved in the booking transaction." *Robertson*, 277 F. Supp. 2d at 99 n.13.

[4]The district court's opinion contains a footnote stating that "[t]he record does not indicate whether [Robertson] used a travel agent" to change the flights to September 10, *see* 277 F. Supp. 2d at 94 n.4, a

### III

We conclude that there is no genuine dispute that the flight on which Robertson sustained her burns qualifies as international transportation within the meaning of the Warsaw Convention. The Convention's two-year statute of limitations therefore applies, barring her claim. Accordingly, the judgment of the district court granting summary judgment in favor of American is

*Affirmed.*

---

statement seemingly inconsistent with its conclusion quoted above. Whatever the court intended by the footnote, we are satisfied to the contrary for the reasons stated above.