# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 6, 2007   Decided February 1, 2008

No. 05-7141

GAIL I. AUSTER, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OFKENNETH PAUL ROSEN,
DECEASED, AND NATURAL MOTHER OF SETH E.
AUSTER-ROSEN AND RACHEL K. AUSTER-ROSEN, MINORS, ET
AL.,
APPELLANTS

v.

GHANA AIRWAYS LTD., ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00733)

---

*Nicholas Gilman* argued the cause for appellants. With him
on the briefs was *John M. Green.*

*Andrew J. Harakas* argued the cause for appellees. With
him on the brief were *Diane Westwood Wilson* and *Michael B.
MacWilliams*.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and
GRIFFITH, *Circuit Judges*.

RANDOLPH, *Circuit Judge*: On June 5, 2000, Airlink Flight 200, traveling from Tamale, Ghana, crashed on its approach to the airport in Accra, Ghana. On board were Kenneth Paul Rosen, his daughter Megan Auster-Rosen, and Siddhartha Prakash. Rosen was killed; Auster-Rosen and Prakash were injured. Gail I. Auster (representing Rosen's estate), Auster-Rosen, and Prakash brought this action against Ghana Airways Ltd., Airlink, and the Republic of Ghana. They sought damages under Article 17 of the Warsaw Convention,[1] which makes an air carrier liable for an injury or death occurring in international transportation aboard its aircraft. The district court held that the Convention did not apply to Airlink Flight 200. We agree.

The Convention, to which the United States and Ghana are signatories, is the exclusive remedy for an individual who is injured aboard an aircraft in international transportation. *El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161 (1999). The Convention provides that a domestic flight constitutes international transportation if it is part of an international itinerary "regarded by the parties[, i.e., the passenger and the carriers,] as a single operation." Art. 1(2)-(3); *see also Robertson v. Am. Airlines, Inc.*, 401 F.3d 499, 502 (D.C. Cir. 2005); *Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1325 (D.C. Cir. 1999).

Rosen and his daughter had tickets to fly out of Accra on Ghana Airways three days after the Airlink flight. Prakash claims that he was scheduled to leave on Ghana Airways one day later. The defendants dispute Prakash's claim, but we will assume it to be true. Plaintiffs argued that the district court had

---

[1]Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. § 40105 note.

jurisdiction to hear their claim under Article 28 of the Convention, which permits a person to sue for damages "in the territory of one of the High Contracting Parties . . . before the court at the place of destination." For a round-trip journey, the destination is the same as the point of origin. *Haldimann*, 168 F.3d at 1325. Here, all three passengers began round-trip journeys in the United States.

All three defendants are "foreign states" within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611. Under the Act, a "foreign state" includes an "agency or instrumentality of a foreign state," which must be "a separate legal person, corporate or otherwise" that is "an organ of a foreign state . . ., or a majority of whose shares . . . is owned by a foreign state." *Id.* § 1603(b)(1)-(2). Ghana's status as a foreign state is obvious. Airlink, which was the name given to the commercial operations of the Ghana Air Force, was an agency or instrumentality of a foreign state. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-52 (D.C. Cir. 1994). Ghana Airways was incorporated under the laws of Ghana and wholly owned by Ghana.

Because they are foreign states, the defendants are immune from suit in federal court absent a statutory or treaty-based exception to the grant of immunity. 28 U.S.C. §§ 1330(a), 1604. Plaintiffs claim that this case presents two such exceptions. First, the Foreign Sovereign Immunities Act grants immunity "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act." 28 U.S.C. § 1604. Because the United States was a party to the Convention when the Act became law, plaintiffs assert that the Act does not preclude their suit. Second, plaintiffs argue that Article 17 of the Convention, which establishes a carrier's liability for "the death or wounding of a passenger," abrogates the defendants' sovereign immunity because 28 U.S.C.

4

§ 1605(a)(1) recognizes an exception if "the foreign state has waived its immunity either explicitly or by implication." Under either theory, the defendants are immune if the Convention does not apply to the Airlink flight. Plaintiffs do not argue that any statute or treaty other than the Convention abrogates the defendants' immunity.

We will assume for the sake of plaintiffs' argument that the Convention constitutes a waiver of immunity, although this proposition is not obvious. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442-43 (1989) (finding no waiver under § 1605(a)(1) when an international agreement did not mention "a waiver of immunity to suit in United States courts"); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) ("A foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so."). *But see* IAN BROWNLIE, PRINCIPLES OF PUBLIC INTERNATIONAL LAW 339 (6th ed. 2003) (the Convention "waive[s] . . . jurisdictional immunities"). Nevertheless, no reasonable juror could conclude that the Convention applies to Airlink Flight 200.

As we mentioned above, Article 1(3) of the Convention provides that a domestic flight constitutes international transportation if it is part of an international itinerary "regarded by the parties as a single operation." Although plaintiffs claim that the three passengers intended their flight from Tamale to Accra to be international transportation, what matters is the objective evidence, not subjective evidence, of the parties' intent. *Robertson*, 401 F.3d at 502, 504 n.3; *Haldimann*, 168 F.3d at 1325.

In February and April 2000, Rosen and Auster-Rosen bought round-trip tickets on Ghana Airways from New York to Accra. Prakash states that his employer bought him a one-way

ticket from Accra to Ouagadougou, Burkina Faso, before May 15, 2000.  Plaintiffs have never alleged that these tickets referred to any domestic flight within Ghana.  While in Accra, Rosen and Auster-Rosen bought round-trip Airlink tickets from a travel agent called M&J Travel & Tours.  These tickets for the trip from Accra to Tamale were labeled "DOMESTIC."  They neither listed a date for the flight from Tamale to Accra nor referred to any international flight.  Before Prakash arrived in Accra, his employer bought him a one-way ticket on Airlink from Tamale to Accra.  This ticket was also labeled "DOMESTIC," it was issued by M&J Travel & Tours, it listed the date of the flight as "OPEN," and it did not refer to any international flight.  None of the three passengers' tickets support the claim that Airlink Flight 200 constituted international transportation.

Despite this lack of documentary support, Auster-Rosen and Prakash say they believed Airlink Flight 200 was operated by Ghana Airways.  Their objective evidence for this belief is that Ghana Airways issued their boarding passes for that flight.  We will assume that the passengers intended their flight on Airlink to be international transportation under the Convention.  Even so, the Convention will not apply unless Ghana Airways and Airlink also regarded the passengers' itineraries "as a single operation."  Convention art. 1(3); *Pimentel v. Polskie Linie Lotnicze (In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980)*, 748 F.2d 94, 96 (2d Cir. 1984); *see Robertson*, 401 F.3d at 502-04.

There is no proof that Airlink intended to provide anything but a ticket for domestic transportation.  Airlink operated only domestic flights and had no operations outside Ghana.  In fact, there was no reason for Airlink to know of the passengers' international itinerary.  Auster-Rosen claims that she and Rosen informed an Airlink representative that they needed to return

from Tamale to Accra in time to catch their flight from Accra to New York. Prakash claims that the travel agent who booked his ticket knew that Prakash was a foreigner in international travel because his employer, the World Bank, purchased the ticket. However, M&J Travel & Tours, not Airlink, dealt with Rosen, his daughter, and Prakash's employer. Even if we were to impute the travel agent's knowledge to Airlink, as plaintiffs urge, we would still agree that to "hold [an air carrier] to Warsaw convention liability for supposed comments made in passing to a single employee is wholly unreasonable. Stray remarks do not alert an airline of its duties and liabilities. The convention requires notice, not clairvoyance." *Santleben v. Continental Airlines, Inc.*, 178 F. Supp. 2d 752, 757 (S.D. Tex. 2001) (quoted with approval in *Coyle v. P.T. Garuda Indon.*, 363 F.3d 979, 993 (9th Cir. 2004)). Under these circumstances, Airlink did not have the knowledge necessary to intend the passengers' flight to be international transportation under the Convention. *See Haldimann*, 168 F.3d at 1325 ("[I]n the rare case where there has been evidence of the traveler's subjective intent, and it contradicted the court's inference from specific documentary indicia, courts have held that the indicia trump subjective evidence.")

Article 23 of the Convention, which prohibits a carrier from limiting its liability, does not nullify Airlink's policy of selling tickets only in Ghana. Airlink did no business and operated no flights outside Ghana. As a result, it might be difficult for any plaintiff to recover from Airlink under the Convention. Nevertheless, a carrier may decline to offer international flights without violating the Convention. Article 33 of the Convention provides that "nothing in this Convention shall prevent the carrier . . . from refusing to enter into any contract of carriage." Additional Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Sept. 25, 1975, S. EXEC. REP. NO. 105-20 (1998), 2145

U.N.T.S. 36, *available at* http://www.jurisint.org/doc/html/ins/en/2000/2000jiinsen17.html. In this case, Airlink simply exercised its freedom not to offer international transportation.

The doctrine of equitable estoppel also cannot overcome the objective evidence in this case. Equitable estoppel means that "he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Dickerson v. Colgrove*, 100 U.S. 578, 580 (1879). Among the requirements for equitable estoppel is false representation. *Int'l Org. of Masters v. Brown*, 698 F.2d 536, 551 (D.C. Cir. 1983). According to plaintiffs, Airlink's refusal to do business outside Ghana somehow misled the passengers into believing that their flight from Tamale to Accra would constitute international transportation. But plaintiffs have identified no false representation by any defendant. Equitable estoppel does not apply.

The district court correctly concluded that the Convention did not apply to the passengers' flight. As a result, the court granted summary judgment to Airlink and Ghana Airways, and dismissed the suit against Ghana for lack of personal jurisdiction. The court should have dismissed the entire case for lack of subject matter jurisdiction. Because the defendants have sovereign immunity, the federal courts lack subject matter jurisdiction in this case. 28 U.S.C. § 1330(a); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983). When a court lacks subject matter jurisdiction, it must dismiss the case and not grant summary judgment. FED. R. CIV. P. 12(h)(3); *United Transp. Serv. Employees ex rel. Washington v. Nat'l Mediation Bd.*, 179 F.2d 446, 453-54 (D.C. Cir. 1949); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2713 (3d ed. 1998). The

district court's orders are vacated and the case is remanded with instructions to dismiss for lack of subject matter jurisdiction.

*So ordered.*