# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 11, 2014          Decided September 12, 2014

No. 13-7019

FREEDOM WATCH, INC.,
APPELLANT

v.

ORGANIZATION OF THE PETROLEUM EXPORTING COUNTRIES
(OPEC),
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00731)

———

*Larry Klayman* argued the cause and filed the briefs for appellant.

*Carolyn B. Lamm* argued the cause for appellee. With her on the brief were *Hansel T. Pham* and *Anne D. Smith*.

*Thomas G. Corcoran Jr.* was on the brief for *amicus curiae* Republic of Austria in support of appellee.

Before: TATEL, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* WILKINS.

SRINIVASAN, *Circuit Judge*:  Freedom Watch, Inc. filed an action against the Organization of the Petroleum Exporting Countries alleging that OPEC violates United States antitrust law by fixing the price of gasoline.  The district court dismissed the complaint for insufficient service of process.  The court held that Freedom Watch had failed to effectuate valid service on OPEC, and it declined Freedom Watch's request to authorize service through alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3).  We agree with the district court that the methods of service attempted by Freedom Watch failed to satisfy the federal rules.  We remand, however, for the district court to reconsider Freedom Watch's request under Rule 4(f)(3) to authorize alternative methods of serving process on OPEC.

I.

OPEC is an intergovernmental organization whose membership consists of twelve petroleum-exporting nations.  As set out in its governing statute, OPEC's "principal aim" is "the coordination and unification of the petroleum policies of Member Countries and the determination of the best means for safeguarding their interests, individually and collectively."  OPEC Stat. art. 2(A) (2000).  The organization is headquartered in Vienna, Austria.  Its relationship with its host nation is governed by a "Headquarters Agreement," formally entitled the Agreement Between the Organization of the Petroleum Exporting Countries and the Republic of Austria Regarding the Headquarters of the Organization of the Petroleum Exporting Countries, Austrian Official Gazette [BGBL] No. 379/1985 (bilateral agreement codified into Austrian law).

On May 7, 2012, Freedom Watch filed suit against OPEC, alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1, and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. The complaint asserts that OPEC and its member nations engage in an international conspiracy to "raise, fix and stabilize the price of gasoline and other petroleum products in the United States" through the use of production quotas and price-fixing agreements. J.A. 8-9, 12-13. Freedom Watch contends that it attempted to serve process on OPEC in two ways: (i) by delivering a copy of the summons and complaint by hand to OPEC headquarters in Vienna, where an individual ostensibly accepted service, and (ii) by sending a copy of the documents via Austrian mail to OPEC headquarters. Freedom Watch filed a proof of service confirming the first of those methods.

On August 21, 2012, after successfully moving to bifurcate its service-of-process objection from the rest of its potential defenses, OPEC moved to dismiss the complaint for insufficient service of process. OPEC argued that neither of Freedom Watch's attempts at service met the requirements of United States (or Austrian) law for effective service. It also asserted that no means of service could be validly effectuated without the express consent of OPEC's Secretary General.

In opposing dismissal, Freedom Watch argued that its attempts to serve process complied with Federal Rule of Civil Procedure 4(f). Freedom Watch stressed that OPEC had received actual notice of the pending action. Freedom Watch also requested that, if the court should deem its attempted methods inadequate, the court then exercise its discretion under Rule 4(f)(3) to authorize alternative methods of service. Freedom Watch suggested, in particular, that service could be effectuated on OPEC via email or fax, or through OPEC's United States counsel.

On September 4, 2013, the district court granted OPEC's motion to dismiss. *See Freedom Watch, Inc. v. OPEC*, 288 F.R.D. 230, 231 (D.D.C. 2013). The court determined that Freedom Watch had failed to establish that it validly served process on OPEC under Rule 4. The court also declined to authorize any alternative form of service of process on OPEC pursuant to Rule 4(f)(3). Freedom Watch appeals.

## II.

We review de novo the district court's determination that Freedom Watch has failed to effectuate valid service of process on OPEC. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). We review for abuse of discretion the district court's denial of Freedom Watch's request to authorize alternative methods of service pursuant to Rule 4(f)(3). *See Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Applying those standards, we agree with the district court that Freedom Watch has not validly served process on OPEC. But we vacate the judgment and remand the case to enable the district court to exercise its discretion under Rule 4(f)(3) to consider Freedom Watch's suggestion that service could be effectuated on OPEC through OPEC's United States counsel.

## A.

A federal court may assert personal jurisdiction over a defendant only if "'the procedural requirements of effective service of process are satisfied.'" *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting *Gorman*, 293 F.3d at 514); *see Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Service of process "'notif[ies] a defendant of the commencement of an action against him'" and "'marks the

court's assertion of jurisdiction over the lawsuit.'" *Mann*, 681 F.3d at 372 (quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992)). Federal Rule of Civil Procedure 4 generally "governs the form, issuance, and service of summons in federal civil actions." *Eades v. Clark Distrib. Co.*, 70 F.3d 441, 442 n.1 (6th Cir. 1995). If a defendant challenges the validity of service of process, the plaintiff bears the burden to "'demonstrate that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4.'" *Mann*, 681 F.3d at 372 (quoting 4A Wright & Miller, Federal Practice and Procedure § 1083 (3d ed. 2002 & Supp. 2012)).

Freedom Watch contends that it satisfied Rule 4 by serving process on OPEC at its headquarters in Vienna via personal delivery and Austrian mail. The district court, relying on the Eleventh Circuit's decision in *Prewitt Enterprises, Inc. v. OPEC*, *supra*, concluded that neither of those methods passes muster under Rule 4. *Prewitt*, like this case, addressed the validity of attempted service of process on OPEC. There, the plaintiff asked the clerk of the court to send a copy of the summons and complaint to OPEC by international registered mail, return receipt requested. 353 F.3d at 919. The clerk did so, mailing the documents to OPEC at its headquarters in Vienna. *Id.* The district court granted dismissal for insufficient service of process. *Id.* at 920. The Eleventh Circuit affirmed, holding, *inter alia*, that service on OPEC via international registered mail, absent OPEC's consent, was ineffective under Rule 4. *Id.* at 919. Here, although Freedom Watch attempted to serve process on OPEC by means other than the method specifically addressed in *Prewitt*—i.e., international mail—the district court deemed Freedom Watch's efforts at service invalid for substantially the same reasons advanced by the Eleventh Circuit in that case. We agree.

Rule 4(h) governs service of process on OPEC, a foreign unincorporated association. Under Rule 4(h), "[u]nless federal

law provides otherwise or the defendant's waiver [of service] has been filed," service abroad on a foreign business entity must be effectuated "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Here, because OPEC has not filed any waiver of service, and because federal law does not "provide[] otherwise," we look to Rule 4(f). Freedom Watch belatedly argues in this court, despite having made no such argument in the district court, that federal law does "provide[] otherwise": according to Freedom Watch, OPEC is a "political subdivision of a foreign state," and service on OPEC thus can be effectuated under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1608(a). But it "'is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.'" *Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) (quoting *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984)). In any event, OPEC is not a political subdivision of a foreign state subject to service under § 1608 of the FSIA. *See Prewitt*, 353 F.3d at 922 n.9. OPEC instead is an intergovernmental organization whose members are foreign sovereign states. *Id.* at 919. The propriety of Freedom Watch's efforts to serve process on OPEC therefore turns on the provisions of Rule 4(f).

Rule 4(f)(1) provides for service of process "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). As the Eleventh Circuit explained in *Prewitt*, there is no "internationally agreed means of service" applicable in this case. *See* 353 F.3d at 922. The evidence submitted by OPEC confirms the point. *See* Expert Decl. of Wolfgang Hahnkamper ¶ 12, ECF No. 7, J.A. 143. Although Austria is a party to the Hague Convention on Civil Procedure, the United States is not. Hahnkamper Decl. ¶ 12.

Conversely, although the United States is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Austria is not. Hahnkamper Decl. ¶ 12; *Prewitt*, 253 F.3d at 922 n.10. And in a diplomatic note, the Austrian government confirmed the absence of any treaty between the European Union and United States that could supersede the requirements of Austrian law for serving process on OPEC. Note Verbale from the Austrian Fed. Ministry for European & Int'l Affairs, to OPEC 2 (June 21, 2012). Because Freedom Watch's attempts to serve process on OPEC cannot be sustained under Rule 4(f)(1), we turn to Rule 4(f)(2).

Rule 4(f)(2) states that, "if there is no internationally agreed means, or if an international agreement allows but does not specify other means," process may be served "by a method that is reasonably calculated to give notice":

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>
>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt . . . .

OPEC's unchallenged evidence of Austrian law demonstrates the inapplicability of Rule 4(f)(2)(A) here. Austrian law considers service of process to be a sovereign act. Hahnkamper Decl. ¶ 13. In Austria, unlike the United States, "service of a complaint (regardless of the sender) is a judicial act that may be exerted only by a court . . . unless an international convention provides specifically for the opposite." *Id.* ¶ 13; *see also id.* ¶ 15; Austrian Service of Documents Act §§ 1, 12(1). Here, no such international convention exists. Hahnkamper Decl. ¶ 15. And because Austrian courts had no involvement with either of Freedom Watch's attempts to serve OPEC in Austria, those efforts were not "prescribed by" Austrian law governing service of process. Fed. R. Civ. P. 4(f)(2)(A). Freedom Watch's attempts in fact violated Austrian law. Austria prohibits service of process on an international organization holding privileges and immunities under international law (which OPEC does) without the involvement of the Austrian Federal Ministry. Hahnkamper Decl. ¶ 16; Austrian Service of Documents Act § 11(2). In addition, the OPEC Headquarters Agreement, a part of Austrian law, bars service of legal process within the headquarters seat without the express consent of OPEC's Secretary General. *Prewitt*, 353 F.3d at 925. Freedom Watch does not contend that it sought the involvement of the Austrian Federal Ministry or received consent from OPEC's Secretary General.

The remainder of Rule 4(f)(2) is equally unhelpful to Freedom Watch. Freedom Watch makes no suggestion that there was any "letter rogatory or letter of request" here—or any response thereto—as would be required for service under Rule 4(f)(2)(B). As for Rule 4(f)(2)(C), its provisions are inapplicable to methods of service, like those attempted by Freedom Watch, "prohibited by the foreign country's law." In any event, personal delivery under Rule 4(f)(2)(C)(i) is unavailable for an unincorporated association like OPEC. *See*

Fed. R. Civ. P. 4(h)(2).  And there is no evidence of compliance with the requirements of 4(f)(2)(C)(ii)—i.e., that a clerk of the court addressed and dispatched the mailing or that it required a signed receipt.

The final provision of Rule 4(f) allows service "by other means not prohibited by international agreement, *as the court orders*."  Fed. R. Civ. P. 4(f)(3) (emphasis added).  To validly effectuate service under Rule 4(f)(3), a plaintiff therefore must affirmatively seek and obtain the district court's authorization for a particular means of service.  *See, e.g.*, *Rio Props.*, 284 F.3d at 1013.  Here, however, Freedom Watch neither sought nor secured the district court's authorization to serve OPEC through personal delivery or Austrian mail.  As a result, Freedom Watch's attempts to effectuate service of process on OPEC through those means failed to satisfy Rule 4(f)(3), or Rule 4(f) more generally.

Unable to demonstrate compliance with Rule 4(f), Freedom Watch principally defends its attempted methods of service on the ground that OPEC gained actual notice of the action, as evidenced by OPEC's participation in the litigation.  It is well established, however, that "before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant."  *Omni Capital*, 484 U.S. at 104.  Although notice is "[a]n elementary and fundamental requirement of due process," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), it "cannot by itself validate an otherwise defective service."  *Entm't Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993); *accord Prewitt*, 353 F.3d at 925; *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999).  Rather, "the procedural requirement of service of summons must be satisfied," and "[t]oday, service of process in a federal action is covered generally by Rule 4."  *Omni Capital*, 484 U.S. at 104; *see Mann*, 681 F.3d at 372 ("[C]ourts have uniformly held . . . a judgment is void where the requirements for effective

service have not been satisfied." (internal quotation marks omitted)). In certain circumstances in which service of process was "in substantial compliance with the formal requirements of the Federal Rules," courts have considered actual notice in sustaining the adequacy of service despite a minor, nonprejudicial defect. *Prewitt*, 353 F.3d at 924 n.14 (collecting cases). But there was no substantial compliance with the requirements of Rule 4 here. We therefore affirm the district court's determination that Freedom Watch failed to effectuate valid service of process on OPEC.

## B.

There remains the question whether the district court abused its discretion in declining to authorize alternative means of service on OPEC. Rule 4(f)(3) permits service of process "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). The parties agree that "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) (quoting *Rio Props.*, 284 F.3d at 1016).

Rule 4(f)(3) contemplates a district court "order[]" authorizing alternative means of service. Fed. R. Civ. P. 4(f)(3). Generally, under the Federal Rules of Civil Procedure and the applicable local rules, a party seeking a district court order would file a formal motion and include a proposed order apprising the court of its request and specifying the relief sought. *See* Fed. R. Civ. P. 7(b) ("*In General.* A request for a court order must be made by motion."); D.D.C. R. 7(c) ("Each motion and opposition shall be accompanied by a proposed order."). Here, however, Freedom Watch did not file a motion or submit a proposed order. Instead, it requested the district court to authorize alternative means of service in its

memorandum in response to OPEC's motion to dismiss. But insofar as Freedom Watch should have perfected its request through a separate motion and proposed order, OPEC made no objection in the district court to the manner in which Freedom Watch sought authorization under Rule 4(f)(3). OPEC instead fully engaged on the merits of Freedom Watch's request. And the district court, following OPEC's lead, squarely addressed (and rejected) Freedom Watch's Rule 4(f)(3) request in its opinion. OPEC waited until oral argument in this court to object to the manner in which Freedom Watch made its Rule 4(f)(3) request, but "oral argument is too late to raise an objection for appellate consideration." *Robertson v. Am. Airlines, Inc.*, 401 F.3d 499, 504 n.2 (D.C. Cir. 2005). In light of the absence of any timely objection by OPEC and of the district court's consideration of Freedom Watch's request on the merits, we likewise address the merits of Freedom Watch's request for authorization of alternative means of service.

Freedom Watch proposed three alternative methods of serving process on OPEC: email, fax, and service through OPEC's United States counsel. For each of those methods, Freedom Watch expressly invoked the district court's power under Rule 4(f)(3) to authorize alternative means of service. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss at 7 ("Email and fax have frequently been approved to effectuate service pursuant to Rule 4(f)(3)."); *id.* at 8 ("Another common method of service pursuant to Rule 4(f)(3) is service on a defendant's United States-based attorney."). Yet in addressing Freedom Watch's request that the court "permit alternative methods for service of process pursuant to Rule 4(f)(3)," the district court appeared to focus solely on the initial two methods. *Freedom Watch*, 288 F.R.D. at 233 (citing page in Freedom Watch's opposition in which it proposed service via email and fax, but not page in which it proposed service through counsel). Recognizing that the plaintiff in *Prewitt* had made "identical arguments" concerning those two methods, the court saw no reason "to stray

from *Prewitt*'s reasoning here." *Id.* (citing *Prewitt*, 353 F.3d at 928).

We perceive no basis for disturbing that conclusion. The plaintiff in *Prewitt* did suggest that service could be effectuated on OPEC via the alternative means of email and fax. 353 F.3d at 927. The Eleventh Circuit rejected those arguments, noting that the Advisory Committee Notes for Rule 4(f)(3) state that "'*an earnest effort* should be made to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law.*'" 353 F.3d at 927 (emphases added by the Eleventh Circuit). In the view of the Eleventh Circuit, service on OPEC via email or fax, without OPEC's consent and in violation of the OPEC Headquarters Agreement, "would constitute a substantial affront to Austrian law." *Id.* As a result, "the district court did not abuse its discretion in denying Prewitt's motion to authorize alternative means of service." *Id.* at 928. The district court here, while engaging in no extended discussion of the matter, considered Freedom Watch's request for service on OPEC via email and fax and rejected it for the reasons set forth in *Prewitt*. We see no abuse of discretion in that ruling.

We reach a contrary conclusion concerning the district court's consideration of Freedom Watch's third proposed method: service through OPEC's United States counsel, the law firm of White & Case. As the district court noted, *Prewitt* gave no consideration to that alternative means. The district court examined it under the criteria set out in Rule 4(h)(1), making no reference to Rule 4(f)(3) in its analysis. The former provision allows for service of process on an unincorporated association in the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service." Fed. R. Civ. P. 4(h)(1)(B). The district court ruled that OPEC "could not have been validly served through its

counsel" under Rule 4(h)(1). The court reasoned that White & Case had not been "authorized by appointment or by law to receive service on [OPEC's] behalf," and also observed that Freedom Watch had not filed proof of service on OPEC's attorneys. *Freedom Watch*, 288 F.R.D. at 233 (citing *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 65 (D.D.C. 2011)); *see Williams*, 792 F. Supp. 2d at 65 ("Delivering a summons and complaint to a corporate representative who is not an officer, a managing or general agent, or an agent authorized to accept service fails to satisfy the requirements of Rule 4(h)[(1)].").

Although there is no basis for questioning the district court's conclusion as a matter of interpreting Rule 4(h)(1), Freedom Watch relied solely on Rule 4(f)(3)—not Rule 4(h)(1)—in seeking authorization to serve OPEC through its United States counsel. And the district court's stated reasons for rejecting service through counsel would not preclude authorization of such service under Rule 4(f)(3). The requirements of Rule 4(h)(1) do not carry over to Rule 4(f)(3). A number of courts thus have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf. *See U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619-20 (S.D. Fla. 2011) (authorizing service on foreign defendants through local counsel who stated that "he is not authorized to accept service of process on behalf of either defendant"); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 931-32 (N.D. Ill. 2009) (permitting substituted service on U.S. attorneys retained by Russian defendants without requiring specific authorization); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, No. 08-828 (JAP), 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (similar); *RSM Prod. Corp. v. Fridman*, No. 06 CIV. 11512(DLC), 2007 WL 2295907, at *1-6 (S.D.N.Y. Aug. 10, 2007) (similar); *Brookshire Bros. v. Chiquita Brands Int'l*, No.

05-CIV-21962, 2007 WL 1577771, at \*2 (S.D. Fla. May 31, 2007) (similar).

Additionally, while the district court relied on Freedom Watch's failure to file proof of service on OPEC's attorneys, the absence of proof of service poses no inflexible barrier to the prospective authorization of such service under Rule 4(f)(3). As a general matter, "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed. R. Civ. P. 4(*l*)(3). Freedom Watch, moreover, volunteered to re-serve OPEC through any of the methods it proposed in its brief. Courts disagree on whether alternative means of service undertaken without court order may be authorized retroactively under Rule 4(f)(3). Compare *Brockmeyer*, 383 F.3d at 806 (Under Rule 4(f)(3), plaintiffs "must obtain prior court approval for the alternative method."), *with Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 379-80 (E.D. Pa. 2009) (retroactively authorizing plaintiffs' attempted service via FedEx). Here, in light of Freedom Watch's failure to file proof of service on OPEC's counsel, there was no reason for the district court to authorize such service retroactively. But as a prospective matter, the district court presumably could have elected to grant Freedom Watch's Rule 4(f)(3) request by ordering service on White & Case within a specified time period and requiring proof of that subsequent service. *See Kaplan v. Hezbollah*, 715 F. Supp. 2d 165, 167 (D.D.C. 2010) (refusing to authorize previous attempt at service retroactively, but authorizing prospective service via publication); *see also* Fed. R. Civ. P. 4(m) (120-day time limit for service of process "does not apply to service in a foreign country under Rule 4(f)").

The district court's apparent consideration of service through OPEC's United States counsel under Rule 4(h)(1)—in lieu of Rule 4(f)(3)—is understandable: it was fully in keeping with OPEC's approach to the issue. OPEC treated Freedom Watch's service-through-counsel argument as entirely distinct

from Freedom Watch's request for Rule 4(f)(3) authorization. And when it addressed the counsel argument, OPEC focused exclusively on Rule 4(h)(1) and cases interpreting that provision. The district court understandably followed suit. Nonetheless, because Freedom Watch specifically relied on Rule 4(f)(3), and because the district court invoked Rule 4(h)(1) instead of its discretionary authority under Rule 4(f)(3) in rejecting Freedom Watch's request, we remand to enable the district court to exercise its discretion under the latter provision. *See Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1250 (D.C. Cir. 2004) (on review for abuse of discretion, remanding for the district court to exercise its discretion when it was "not so clear" that "the district court thought it had discretion").

On remand, the district court retains discretion under Rule 4(f)(3) to authorize service even if the alternative means would contravene foreign law. *See Rio Props.*, 284 F.3d at 1014 ("[A]s long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country."); *cf. Prewitt*, 353 F.3d at 928 n.21. In contrast to the Advisory Committee Notes for Rule 4(f)(2), which state that "[s]ervice by methods that would violate foreign law is not generally authorized," the Rule 4(f)(3) Advisory Notes state only that "an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense* to foreign law." Fed. R. Civ. P. 4 Notes of Advisory Comm. on Rules – 1993 Amendments (emphasis added). Accordingly, even if service cannot be effectuated on OPEC through United States counsel without violating Austrian law, the district court could still authorize such service if it would "minimize" offense to Austrian law. And while Rule 4(f)(3) addresses service only "at a place not within any judicial district of the United States," Fed. R. Civ. P. 4(f), arguably, when a court orders service on a foreign entity through its counsel in the United States, the attorney functions as a

mechanism to transmit the service to its intended recipient abroad. The parties do not address that issue and we have no occasion to resolve it.

Our decision to remand should not be mistaken for agreement with Freedom Watch that the district court *must* authorize some method of serving process on OPEC as a matter of due process, public policy, or enforcement of United States antitrust law. Freedom Watch identifies no authority obligating a district court to authorize an alternative method of service under Rule 4(f)(3) when there is no other available method to serve the defendant without its consent. Indeed, this court has made clear that, insofar as the formal requirements of service of process give rise to a "loophole" enabling a defendant to evade service of process, "*the legislature* can, of course, remove it by amending [the statute] to provide an alternative method of service." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 516 (D.C. Cir. 2002) (emphasis added). But the district court must at least exercise its discretion under Rule 4(f)(3), which it can now do on remand.

*  *  *  *  *

For the foregoing reasons, we vacate the district court's order of dismissal and remand for further proceedings consistent with this opinion. Freedom Watch also raises arguments entirely unrelated to OPEC's service-of-process objections. Those arguments are not properly before this court at this time. The district court established a bifurcated briefing schedule under which OPEC initially submitted a motion to dismiss addressing only service of process. If the district court authorizes alternative service of process on remand, briefing on OPEC's other defenses may properly proceed in the district court in the first instance. *See Doe v. DiGenova*, 779 F.2d 74, 89 (D.C. Cir. 1985) ("When the issue has, through no fault of the parties, not

been briefed or argued in any forum, the appropriate disposition is typically to remand the case to the district court.").

*So ordered.*

WILKINS, *Circuit Judge*, concurring in part and dissenting in part: With one exception, I join the Court's fine explication and application of Rule 4. I concur that the service attempted by Freedom Watch was defective.

But I part ways with the Court in its remand ordering the District Court to exercise its discretion under Rule 4(f)(3) with respect to the prospective authorization of service through counsel. *See* Fed. R. Civ. P. 4(f)(3). In my view, Freedom Watch did not invoke the exercise of that discretion in the District Court proceedings and so no question about it is properly before the Court here.

Under the governing rules of civil procedure, such alternative service is available "as the court orders," *id*., and "[a] request for a court order *must* be made by motion." Fed. R. Civ. P. 7(b)(1) (emphasis added). As is apparent from the record and as its counsel conceded at oral argument, Oral Arg. Tr. at 5-6, Freedom Watch did not file a motion with the District Court on fashioning prospective authorization, pursuant to Rule 4(f)(3), for service on counsel in the United States. Freedom Watch did not even explicitly raise the issue in its opening brief to this Court. I disagree with the Court that the District Court ruled on a deemed motion for prospective authorization of service under Rule 4(f)(3) through one paragraph of the opinion on the motion to dismiss. To the extent that question is debatable, I would resolve the uncertainty by assuming, particularly where the plaintiff was represented by counsel, that the District Court did not deem something a motion where no motion was made in a form that complies with the rules. *See* Fed. R. Civ. P. 7(b)(1) ("The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."); *Benoit v. U.S. Dep't of Agric*., 608 F.3d 17, 21 (D.C. Cir. 2010) (holding that a suggestion in opposition to a motion to dismiss does not constitute a motion). I do not

believe we should conclude that once the District Court considered some of the plaintiff's improperly raised arguments, it was an abuse of discretion not to consider all of the improperly raised arguments. Such an approach validates the adage that "no good deed goes unpunished." More importantly, it threatens to encourage indifference to the rules and to hinder district courts in their work securing the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The problem with Freedom Watch's mode of litigating is reflected in its opening brief, where it maintains that "OPEC was properly served," and alternatively, that "the Court [should] remand this case with *instructions to the lower court to determine and devise the method for Plaintiff to effectuate service of process* upon Defendant through an alternative method of service, to alleviate any uncertainty." Appellant Br. 28 (emphasis added). Freedom Watch actually asked us to order the District Court to "determine and devise" how the Defendant can be effectively served. In our adversarial system, litigation does not proceed along such lines. Instead, Freedom Watch must identify for itself the appropriate course of action, file a motion seeking its favored relief, and allow the other side to respond. Only that way does the trial court have an explicit request and a reasonably developed record upon which to base a ruling. Freedom Watch's litigation approach is even more inexcusable given that (as OPEC pointed out to the District Court) this is its second federal lawsuit against OPEC and its second try at correctly effectuating service. *See* Order, *Freedom Watch, Inc. v. OPEC*, 08-21630-CIV (S.D. Fla. Dec. 19, 2008), J.A. 586-87.

The ruling on appeal decided OPEC's motion to dismiss, which the District Court granted *without prejudice to refiling*. Even without this appeal, Freedom Watch was free to refile

the case and properly move the District Court for alternative service under Rule 4(f)(3).  To the parties, this may be a distinction without a difference (except for the filing fee).  But appeals involve rights to review of specific decisions in the court below; they are not lifelines for lawyers to ask an appellate bench for help charting a path across the seas of civil procedure—even when traversing rough waters such as these in seeking to serve an international organization with headquarters in a foreign country.

This Court has previously stated that insufficiency of service of process warrants dismissal without prejudice.  *See Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).  Where, as here, a plaintiff has not raised any special circumstances of the dismissal that would have prevented filing of a new lawsuit, this Court "cannot regard the dismissal as an abuse of discretion."  *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (reviewing dismissal of case without prejudice under abuse of discretion standard).

I would stop there and simply affirm.